### In re COOK'S WILL.

County Judge's Court, Palm Beach County.

October 12, 1955.

52

Johnson & Johnson, West Palm Beach, for proponent.

F. Malcolm Cunningham, West Palm Beach, for respondent.

RICHARD P. ROBBINS, County Judge.

James Cook died in Miami on June 15, 1955, and on the 22nd day of that month his widow, Luella Cook, from whom he had been separated for approximately twenty years, filed her petition in this court alleging that at the time of his death he was domiciled in West Palm Beach, died intestate and left surviving him as his only heirs at law the petitioner and three children, Ida Lou, a daughter 25 years of age, Luella, a daughter 23 years of age, and Collis, a son 20 years of age. Letters of administration were thereupon issued to the petitioner.

On August 2, 1955 one Louise Cook filed a petition in which she alleged that she was the wife of James Cook, and that he died leaving a nuncupative will, made on June 10, 1955 before three or more witnesses in his last sickness. The nuncupative testament,

as reduced to writing, signed and sworn to by the witnesses and offered for probate, follows—

> "The following statement was made by James Cook, deceased, at the time of his last sickness and death as his will, in the presence of the undersigned as attesting witnesses:
>
> 'I have my insurance out to the Base that I want Louise to have.'"

> Signed: Dr. Donald C. Anderson
> Gladys Richardson
> Mary Gaston
> Johnnie Gilmore
> Albeartha Gilmore

It was suggested throughout the proceeding that Louise Cook was the common law wife of the deceased inasmuch as they cohabited as such for a long period of time and were known as husband and wife in the community in which they lived, but the evidence shows that such relationship did not legally exist because James Cook was married to Ella (Lou Ella or Luella) Randolph in Coffee County, Georgia in 1938 and had not been divorced at the time of his death.

The facts surrounding the making of the nuncupative testament are substantially as follows—

On June 10, 1955 James Cook was stricken with a cerebral hemorrhage at his home in West Palm Beach. Louise, with whom he was living as his wife, called a doctor and some friends. The doctor, realizing the gravity of the situation, recommended that he be taken to a hospital, whereupon a search for his war records was commenced to enable his entrance to a veteran's hospital. It was during this time that the deceased beckoned, by a motion of his hand, those in the room to come near to him, and the said Gladys Richardson, Mary Gaston, Johnnie Gilmore and Albeartha Gilmore spontaneously responded to his bidding and stood by his bedside together with Dr. Anderson. The deceased, pointing his finger toward Louise Cook, then spoke the words now sought to be probated as his nuncupation. This was about 8 P.M. Before the morning of the next day he began to lose his speech, went into a coma and died five days later at the hospital to which he had been sent, without regaining his speech.

It is contended by the respondent, Luella Cook, that there is no proof that the decedent intended his statement to be a disposition of his assets, reasoning that had this been his intention he would

have stated his desire to make a will to the witnesses. Is this lack of verbal expression fatal to the validity of such a will?

Mr. Redfearn, in his book entitled Wills and Administration of Estates in Florida (2d Ed.), section 21, page 42, says—

> It will be noticed that the Florida Probate Law, in stating the formalities necessary in a nuncupative will, requires that the testator "did desire" the persons present, or some of them, to bear witness that such was his will, whereas the nineteenth section of the Statute of Frauds, from which the Florida law was taken, uses the words "did bid" the persons present, or some of them, to bear witness that such was his will. Thus, it would appear that it would not be necessary in Florida for the testator to bid the witnesses to bear witness that he was making his will. It would be sufficient to prove that the testator expressed to the witnesses a desire to make a will. * * * The testator's request need not be oral; he may notify the witnesses by acts, signs, or gestures that he is going to speak his will.

The question in this case, as I see it, depends upon the sufficiency of the proof as to the rogatio testium of the nuncupative testament sought to be probated.

Ballentine defines rogatio testium as—"A request of witnesses, —a request made by signs or words to some or all of those persons present, by the testator in a nuncupative or oral will, to bear witness that such is his will, in order to render it valid." Thus it is seen that in those states where the requirement of the statute of frauds has been relaxed by statute, it is not necessary that the testator call upon the witnesses, or some of them to bear witness to his will. It is sufficient, as stated by the Supreme Court of Tennessee in Baker v. Dodson, 40 Am. Dec. 651, if by intelligent act and language, he invokes their special attention and attestation to what he is going to say, or to what he has said.

Like our statute in Florida, the Illinois statute has abrogated the requirement of the statute of frauds and requires only that it be shown that the testator did, at the time of declaring his will, desire the persons present, or some of them, to bear witness that such was his will, or words to that effect. The Supreme Court of that state, Harrington, et al v. Stees, et al, 82 Ill. 57, said that— "The last phrase of this statute was evidently intended to do away with all formal objections as to the mode of manifesting a desire that the persons should be witnesses."

The very import of the words used by the decedent and the manner in which they were spoken convinces me of his intention to make a testamentary disposition and this I believe was supported by the testimony of the doctor and the witnesses to the effect

that there was a complete understanding among all of them at the time that James Cook was making his will.

The respondent further contends that at the time of the nuncupation deceased had full use of his hands and had opportunity to make a written will when he made the statement concerning his insurance and having failed to do so the purported will is void.

In the Historical and Statutory Background of the Law of Wills by Alison Reppy and Leslie J. Tompkins, at page 9 in footnote 60, it is said that—"Chancellor Kent argued, and was sustained by the court in holding, that, in view of the opportunities for fraud in making oral wills, the term 'last sickness' in the statute must be construed to include only the last hours of the sickness; that the last sickness is only when the person is in extremis. * * * On the other hand, it has been held that the will is not bad because the testator did live long enough after the nuncupation to have made a will in writing, and was not in immediate fear of death." And Mr. Redfearn says in section 20 of his work, aforesaid, that—"What may be deemed the last sickness is dependent upon each particular case and is naturally a question of fact. It is possible for a person to make a nuncupative will and then lapse into a state of unconsciousness and remain so for weeks, or in such a weakened condition that it would not be advisable to attempt to have the will executed as a written will."

It is, therefore, the decision of the court upon the law of the case and the evidence taken herein that the purported nuncupative testament of James Cook, deceased, made on the 10th day of June, 1955, reduced to writing and sworn to as aforesaid, is valid, and the same is hereby admitted to probate and record in this court as such.